**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| David Cathey, | § | |
| | § | |
| Plaintiff, | § | CA No.: 4:26-cv-1776 |
| | § | |
| v. | § | CLASS ACTION COMPLAINT |
| | § | |
| Zip Capital Group, LLC, | § | Jury Demanded |
| | § | |
| Defendant. | § | |

**PLAINTIFF DAVID CATHEY'S ORIGINAL INDIVIDUAL AND CLASS ACTION COMPLAINT**

David Cathey ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about intrusive, nuisance telemarketing practices. Plaintiff sues under 47 U.S.C. § 227(b) for prerecorded-voice calls made without consent. He also sues under Section 305.053 of the Texas Business & Commerce Code and Section 302.101 of the Texas Business & Commerce Code. Plaintiff brings these claims individually and on behalf of classes of similarly situated persons under Federal Rule of Civil Procedure 23.

## 1. Background

1.1. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012). Congress intended to give consumers a choice as to how creditors and telemarketers may call them. As applicable here, Section 227(b)(1)(A)(iii) of the TCPA prohibits making "any call (other than a call made for emergency purposes or made with the

prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service, … or any service for which the called party is charged for the call[.]"

1.2. Zip Capital Group, LLC ("Defendant" or "Zip"), directly or through its telemarketing representatives, made at least 122 calls to Plaintiff's telephone number (469-XXX-4736, the "Telephone Number") between October 1, 2025 and January 21, 2026. Each call delivered the same artificial or prerecorded voice message under the name "Capital Group." Each message solicited Plaintiff to apply for a business line of credit.

1.3. Plaintiff never gave Defendant consent, written or otherwise, to call the Telephone Number with a prerecorded voice. At least eight of the calls came after Plaintiff told Defendant to stop calling. These calls violated the TCPA and Texas law.

1.4. Defendant's calls to Plaintiff were not isolated. They were part of a mass prerecorded calling campaign that Defendant used to market its financing products to thousands of persons nationwide, including in Texas, without their consent and without registering with the Texas Secretary of State. Plaintiff brings this action to stop that campaign and to recover damages for himself and the Classes defined below.

## 2. Parties

2.1. Plaintiff David Cathey is a natural person who resides in McKinney, Collin County, Texas, in this District. He received the calls at issue in Texas, in this District.

2.2. Defendant Zip Capital Group, LLC is a California limited liability company with its principal place of business at 26 Executive Park, Suite 100, Irvine, California 92614.

Defendant markets working capital financing, business lines of credit, merchant cash advances, equipment financing, and SBA financing to businesses throughout the United States, including in Texas. Defendant may be served through its registered agent for service of process.

**3. Jurisdiction and Venue**

3.1. The Court has federal-question subject matter jurisdiction over the TCPA claims under 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

3.2. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The proposed Classes include more than 100 members. The amount in controversy exceeds $5,000,000, exclusive of interest and costs, given statutory damages of $500 to $1,500 per prerecorded call and up to $5,000 per unregistered Texas solicitation. At least one class member, including Plaintiff, a citizen of Texas, is a citizen of a State different from Defendant, a citizen of California. [CONFIRM: citizenship of Zip's members for LLC citizenship.]

3.3. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a). They arise from the same calls and form part of the same case or controversy as the federal claims.

3.4. The Court has specific personal jurisdiction over Defendant. Defendant, directly or through its agents, called a telephone number with a Texas area code (469) belonging to a Texas resident at least 122 times. Defendant's calls displayed rotating caller-ID numbers with Texas area codes, including 254, 281, 346, 361, 409, 430, 432, 469, 713, 726, 806, 817, 830, 903, 915, 936, 940, 945, 956, and 972. That shows Defendant knew it was calling into Texas and chose to appear local to Texas

recipients. Plaintiff alleges that discovery will show Defendant called many other Texas numbers. Defendant purposefully directed its conduct at Texas, and Plaintiff's claims arise from that conduct.

3.5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims occurred here: Plaintiff received the calls in this District.

## 4. Article III Standing

4.1. Plaintiff has Article III standing for his claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (unwanted telemarketing contact is a concrete injury akin to intrusion upon seclusion); *Morris v. Hornet Corp.*, No. 4:17-CV-00350, 2018 WL 4781273 (E.D. Tex. Sept. 14, 2018), *report and recommendation adopted*, 2018 WL 4773547 (E.D. Tex. Oct. 3, 2018).

4.2. Defendant's prerecorded calls harmed Plaintiff in the following ways:

4.2.1. Plaintiff's privacy was invaded by Defendant;

4.2.2. Plaintiff was harassed and abused by Defendant's repeated prerecorded calls, often several in one day;

4.2.3. Defendant's calls were a nuisance to Plaintiff;

4.2.4. Plaintiff's telephone line was unavailable for other use while processing Defendant's calls, and on January 9 and January 12, 2026, Defendant's simultaneous calls occupied multiple lines at once;

4.2.5. Plaintiff was charged for incoming calls on the Telephone Number, so Defendant's calls cost Plaintiff money; and

4.2.6. Plaintiff was inconvenienced by Defendant's calls, including by having to answer, screen, or review the recorded messages.

## 5. The Law Regarding Prerecorded Calls

5.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that consumers consider prerecorded-voice calls "a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5), (10) (1991).

5.2. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

5.3. Under the FCC's rules, a prerecorded call that includes or introduces an advertisement or constitutes telemarketing requires the called party's *prior express consent*.

5.4. Every artificial or prerecorded message must, at the beginning, state clearly the identity of the business responsible for the call, including its name as registered with a state corporation commission. During or after the message it must state a telephone number of that business. 47 C.F.R. § 64.1200(b)(1)–(2). A prerecorded telemarketing message must also offer an automated, interactive opt-out mechanism at the outset. 47 C.F.R. § 64.1200(b)(3).

5.5. The TCPA creates a private right of action for violations of Section 227(b) and its regulations. A plaintiff may recover actual damages or $500 per violation, whichever is greater. The court may treble damages to up to $1,500 per violation if the defendant violated the statute willfully or knowingly. 47 U.S.C. § 227(b)(3).

5.6. The Supreme Court's construction of "automatic telephone dialing system" in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), does not limit the prerecorded-voice prohibition. A call made with an artificial or prerecorded voice violates Section 227(b)(1)(A) regardless of the equipment used to dial it.

## 6. Vicarious Liability

6.1. A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if it did not dial the calls itself. *See In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (the party on whose behalf a solicitation is made "bears ultimate responsibility for any [TCPA] violations"). In May 2013, the FCC issued a binding declaratory ruling that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

6.2. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under several theories, including vicarious liability. Under those circumstances, including as described here as to Defendant, the seller is deemed to have initiated the call through the person or entity that actually placed it.

**7. Texas Telephone Solicitation Registration and Robocall Statutes**

7.1. Section 302.101 of the Texas Business & Commerce Code prohibits a seller from making a telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller holds a registration certificate from the Texas Secretary of State for the business location from which the solicitation is made. A separate registration certificate is required for each business location. Tex. Bus. & Com. Code § 302.101(a)–(b).

7.2. A "seller" is a person who makes a telephone solicitation on the person's own behalf. A "telephone solicitation" is a call or other transmission initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. A "purchaser" is a person who is solicited to become obligated for the purchase or rental of an item, or who is offered an opportunity to claim or receive an item. An "item" means property or a service. Tex. Bus. & Com. Code § 302.001. A person makes a telephone solicitation if the person effects or attempts to effect one, "including a solicitation initiated by an automatic dialing machine or a recorded message device." *Id.* § 302.002.

7.3. Sellers engaging in telephone solicitations must register and, among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." Tex. Bus. & Com. Code § 302.151(10).

7.4. Chapter 302 "shall be liberally construed and applied to promote its underlying purpose to protect persons and the public against false, misleading, or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003.

7.5. A person who violates Chapter 302 is subject to a civil penalty of not more than $5,000 for each violation. The party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code § 302.302(a), (d). A violation of Chapter 302 is also a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17, and the remedies under that subchapter may be used to enforce Chapter 302. *Id.* § 302.303.

7.6. Under Section 305.053 of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may sue the person who originates the communication for an injunction, damages, or both. The plaintiff may recover the greater of $500 or actual damages for each violation. The award may be increased to the greater of $1,500 or three times actual damages for each violation the defendant committed knowingly or intentionally. Tex. Bus. & Com. Code § 305.053(a)–(c).

## 8. Factual Allegations: Defendant Placed Prerecorded Telemarketing Calls to Plaintiff

8.1. Plaintiff is the subscriber to and user of the telephone number 469-XXX-4736. The Telephone Number is provisioned through a voice-over-IP service on which the subscriber is charged for each incoming call. Plaintiff was charged for each of Defendant's calls.

8.2. Between October 1, 2025, and January 21, 2026, Plaintiff received at least 122 calls to the Telephone Number from Defendant or from telemarketing representatives acting as Defendant's agents and on its behalf. All references to Defendant here include its telemarketing representatives. The chart attached as **Exhibit A** and

incorporated here lists the calls Plaintiff currently knows about. Plaintiff believes discovery will show additional calls. None of the calls was made for emergency purposes.

8.3. Every call delivered an artificial or prerecorded voice message. The messages followed one script, varying only the first name of the purported caller ("Antoinette," "Barbara," "Anthony," "Briana," "Christina," "Lara," and others). A representative message, transcribed from Plaintiff's recording, stated:

> This call may be recorded. Hi, this is Antoinette with Capital Group. I'm calling because based on your records for your company, you currently qualify for a line of credit for up to $250,000 with low single-digit rates. Please just give me a call back at 949-919-8948 so we can get this application completed. I look forward to speaking with you.

8.4. The messages were identical in content, cadence, and delivery across more than 100 calls. They were not tailored to Plaintiff and were delivered without any live person on the line. Several calls arrived at the same instant: two calls at 3:26:15–16 p.m. on January 9, 2026; four calls between 9:17:41 and 9:17:47 a.m. on January 12, 2026; and three calls between 11:01:14 and 11:01:16 a.m. on January 12, 2026. No live caller can place simultaneous calls. These facts show that the messages were prerecorded and delivered by automated equipment.

8.5. The calls displayed 97 different caller-ID numbers, most with Texas area codes, and rarely repeated a number for long. On information and belief, Defendant or its agents spoofed or rotated these numbers to appear local, to evade call blocking, and to hide the caller's identity.

8.6. The calls were made to encourage the purchase of Defendant's business financing products, specifically a business line of credit. They were telephone solicitations and calls made for telemarketing purposes.

8.7. **Defendant is the seller behind the calls.** On January 9, 2026, at about 9:15 a.m. Central Time, Plaintiff called a callback number provided in one of the prerecorded messages, 682-245-6511. A person identifying himself as "Joseph" from "Capital Group" answered and transferred Plaintiff to Maya Sotelo. Ms. Sotelo then emailed Plaintiff her contact information under a Zip Capital Group, LLC signature block, listing 26 Executive Park, Suite 100, Irvine, California 92614. She confirmed that "Capital Group" and "Zip Capital Group" were the same company. She also confirmed verbally that the message Plaintiff received was a marketing message and that she was familiar with call-backs in response to those recorded messages.

8.8. On January 12, 2026, at about 10:32 a.m. Central Time, Plaintiff called another callback number provided in the prerecorded messages, 714-853-6867. A person identifying himself as "Indy" from "Capital Group" answered and transferred Plaintiff to a Zip employee named Conner. Conner confirmed orally and by email that he worked for Zip Capital Group.

8.9. The name, address, and email domain provided by Defendant's personnel match Defendant's business records with the California Secretary of State and Defendant's website. The callback number in the representative message, 949-919-8948, bears an area code serving Irvine, California, where Defendant is headquartered.

8.10. Defendant authorized the calls, directed them, and accepted their benefits. Defendant's employees answered the callback numbers the messages provided, took

transfers of call recipients from the front-line callers, and tried to sell Defendant's products to those recipients. Defendant therefore made the calls directly, or is vicariously liable for them under actual authority, apparent authority, and ratification.

8.11. The messages did not identify Defendant by its registered name, Zip Capital Group, LLC. They identified the caller only as "Capital Group." The messages offered no automated, interactive mechanism to opt out of future calls. 47 C.F.R. § 64.1200(b).

8.12. On January 12, 2026, Plaintiff told Defendant to stop calling the Telephone Number. Defendant made at least eight more prerecorded calls after that notice, including calls on January 12 and January 21, 2026, as shown in Exhibit A.

8.13. Plaintiff is not and has never been a customer of Defendant. He has no established business relationship with Defendant. He never gave Defendant prior express consent to call the Telephone Number using an artificial or prerecorded voice.

8.14. Plaintiff was in Texas when he received each call.

8.15. At the time of the calls, Defendant did not hold a registration certificate from the Texas Secretary of State under Section 302.101 of the Texas Business & Commerce Code for any business location from which the calls were made.

8.16. **Defendant's violations were willful and knowing.** Defendant or its agents used rotating, spoofed caller-ID numbers. They hid Defendant's identity behind the generic name "Capital Group." They placed simultaneous calls, and they kept calling after Plaintiff told them to stop. Defendant knows the TCPA's requirements: it has been sued for TCPA violations before. *See, e.g., Agbim v. Zip Capital Group, LLC*, No. 8:20-cv-01920 (C.D. Cal. filed Oct. 5, 2020); *Simon v. Zip Capital Group, LLC*, No. 3:25-cv-00644 (D.S.C. filed Feb. 4, 2025).

**9. Class Action Allegations**

9.1. Plaintiff brings this action individually and as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of the following classes (together, the "Classes"):

9.1.1. **Prerecorded Voice Class:** All persons in the United States to whose cellular telephone number, or telephone number assigned to a service for which the called party is charged for the call, Defendant (or someone acting on its behalf) placed one or more calls using an artificial or prerecorded voice to market Defendant's goods or services, from four years before the filing of this Complaint through the date of class certification.

9.1.2. **Texas Registration Class:** All residents of the State of Texas to whose telephone number Defendant (or someone acting on its behalf) placed a telephone solicitation, by telephone call or text message, at a time when Defendant did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101, from four years before the filing of this Complaint through the date of class certification.

9.1.3. **Texas Prerecorded Voice Subclass:** All members of the Prerecorded Voice Class who received the call or calls in Texas.

9.2. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

9.3. Plaintiff reserves the right to amend the class definitions after discovery.

9.4. **Numerosity.** The members of the Classes are so numerous that joinder of all members is impracticable. Defendant placed at least 122 prerecorded calls to Plaintiff alone, from 97 different caller-ID numbers, using a single scripted message that was not tailored to Plaintiff. Several calls were placed at the same instant. On information and belief, Defendant used the same prerecorded message and calling campaign to call thousands of other persons. Other consumers have publicly complained of receiving repeated unsolicited calls from or on behalf of Defendant, including calls from call centers that qualify the recipient and then transfer the call to Defendant's personnel. The Classes are comprised of hundreds, if not thousands, of individuals.

9.5. **Ascertainability.** The exact number and identities of the persons who fit within the Classes are ascertainable. Defendant and third parties, including its telemarketing vendors, dialing platforms, and telephone carriers, maintain written and electronically stored data showing:

9.5.1. The time period(s) during which Defendant made the telephone calls;

9.5.2. The telephone numbers to which Defendant made telephone calls;

9.5.3. Whether each call delivered an artificial or prerecorded voice message;

9.5.4. The purposes of such telephone calls; and

9.5.5. The names and addresses of Class members.

9.6. **Commonality.** There are common questions of law and fact affecting the rights of the members of the Classes, including, inter alia, the following:

9.6.1. Whether Defendant, or someone acting on its behalf, made calls using an artificial or prerecorded voice;

9.6.2. Whether the calls were made for telemarketing purposes;

9.6.3. Whether Defendant obtained prior express written consent before making the calls;

9.6.4. Whether Defendant is vicariously liable for calls placed by its telemarketing vendors;

9.6.5. Whether Defendant held a registration certificate from the Texas Secretary of State when it made the telephone solicitations;

9.6.6. Whether any exemption under Subchapter B of Chapter 302 of the Texas Business & Commerce Code applies to Defendant;

9.6.7. Whether Defendant's violations were willful or knowing;

9.6.8. The appropriate amount of damages for each violation; and

9.6.9. Whether Defendant should be enjoined from engaging in such conduct in the future.

9.7. **Typicality.** Plaintiff is a member of the Classes. Plaintiff's claims are typical of the claims of the members of the Classes because they arise from Defendant's uniform conduct, namely the same prerecorded calling campaign made without consent or Texas registration, and are based on the same legal theories.

9.8. **Concrete harm.** Plaintiff and all putative members of the Classes suffered concrete harm in addition to statutory damages. All members of the Classes spent time tending to Defendant's unwanted prerecorded calls and suffered a nuisance and an invasion of their privacy.

9.9. **Adequacy.** Plaintiff has no interests antagonistic to, or in conflict with, the Classes. Plaintiff will thoroughly and adequately protect the interests of the Classes, having

retained qualified and competent legal counsel experienced in TCPA class actions to represent him and the Classes.

9.10. **Rule 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to the Classes, making final injunctive and declaratory relief appropriate for the Classes as a whole.

9.11. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

9.12. **Rule 23(b)(3).** Common questions predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, inter alia, the damages suffered by each class member make individual actions uneconomical. There will be no unusual manageability issues: liability turns on Defendant's own calling records, its uniform prerecorded message, and its registration status.

## 10. Count One: Violation of 47 U.S.C. § 227(b)(1)(A)(iii) – Artificial or Prerecorded Voice Calls (Individually and on Behalf of the Prerecorded Voice Class)

10.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth here.

10.2. Defendant, directly or through agents acting on its behalf, made at least 122 calls to the Telephone Number using an artificial or prerecorded voice. Defendant made the same type of calls to the members of the Prerecorded Voice Class.

10.3. The Telephone Number is assigned to a service for which the called party is charged for the call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii). The telephone

numbers of the members of the Prerecorded Voice Class are assigned to cellular telephone services or to services for which the called party is charged for the call.

10.4. None of the calls was made for emergency purposes. None was made with the prior express consent, or the prior express written consent required by 47 C.F.R. § 64.1200(a)(2), of Plaintiff or the members of the Prerecorded Voice Class.

10.5. Each call is a separate violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii) and (a)(2).

10.6. Defendant's violations were willful and knowing, as alleged in paragraph 8.16. At a minimum, the eight calls Defendant made after Plaintiff's January 12, 2026 do-not-call request were willful and knowing.

10.7. Relief Sought: Plaintiff, individually and on behalf of the Prerecorded Voice Class, requests the following relief:

10.7.1. That Defendant be enjoined from making artificial or prerecorded voice calls in violation of the TCPA, 47 U.S.C. § 227(b)(3)(A);

10.7.2. That Defendant, its agents, and anyone acting on its behalf be immediately restrained from altering, deleting, or destroying any documents or records, including call detail records, dialer logs, audio files, lead sources, and vendor contracts, that could be used to identify class members; and

10.7.3. That Plaintiff and each member of the Prerecorded Voice Class be awarded statutory damages of $500 for each violation, trebled to $1,500 for each willful or knowing violation, 47 U.S.C. § 227(b)(3).

**11. Count Two: Violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(b) – Failure to Identify and to Provide an Opt-Out Mechanism (Individually)**

11.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth here.

11.2. The FCC adopted 47 C.F.R. § 64.1200(b) under its authority to implement Section 227(b). It requires every artificial or prerecorded voice message to state clearly, at the beginning, the identity of the business responsible for the call, including the business's name as registered with a state corporation commission or comparable regulatory authority. 47 C.F.R. § 64.1200(b)(1).

11.3. A prerecorded message that constitutes telemarketing must also provide an automated, interactive voice- and/or key press-activated opt-out mechanism within two seconds of the identification required above. 47 C.F.R. § 64.1200(b)(3).

11.4. Each of Defendant's prerecorded messages identified the caller only as "Capital Group," not by Defendant's registered name, Zip Capital Group, LLC. None of the messages provided the required automated opt-out mechanism.

11.5. Each call is a separate violation of 47 C.F.R. § 64.1200(b), which is enforceable through 47 U.S.C. § 227(b)(3).

11.6. Relief Sought: Plaintiff requests statutory damages of $500 for each violation, trebled to $1,500 for each willful or knowing violation, together with the injunctive and preservation relief requested in paragraph 10.7.

**12. Count Three: Violation of Texas Business & Commerce Code § 302.101 – Telephone Solicitation Without Registration (Individually and on Behalf of the Texas Registration Class)**

12.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth here.

12.2. Defendant is a "seller" under Tex. Bus. & Com. Code § 302.001(5). It made telephone solicitations on its own behalf, directly or through salespersons and telemarketing representatives it employed or authorized.

12.3. Plaintiff and the members of the Texas Registration Class are "purchasers" under Tex. Bus. & Com. Code § 302.001(3). Defendant solicited them to become obligated for its financing products, including business lines of credit, and offered them an opportunity to claim or receive those items.

12.4. After September 1, 2025, Plaintiff received at least 122 telephone solicitations from Defendant at the Telephone Number, in the form of prerecorded-voice calls initiated by a recorded message device. Tex. Bus. & Com. Code §§ 302.001(7), 302.002.

12.5. Defendant's telephone solicitations to Plaintiff were made to Plaintiff while Plaintiff was located in Texas. Defendant's telephone solicitations to the members of the Texas Registration Class were made from a location in Texas or to those individuals while they were located in Texas.

12.6. When Defendant made the telephone solicitations to Plaintiff and the members of the Texas Registration Class, it had not obtained a registration certificate from the Texas Secretary of State under Tex. Bus. & Com. Code § 302.101 for any business location from which the solicitations were made.

12.7. No exemption under Subchapter B of Chapter 302 applies to Defendant, and Defendant bears the burden of proving any exemption. Tex. Bus. & Com. Code § 302.051.

12.8. Each telephone solicitation is a separate violation of § 302.101.

12.9. Plaintiff and the members of the Texas Registration Class are entitled to and seek an award of up to $5,000 for each violation and all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code § 302.302(a), (d).

12.10. In the alternative, each violation of Chapter 302 is a false, misleading, or deceptive act or practice actionable under Subchapter E, Chapter 17 of the Texas Business & Commerce Code. Plaintiff and the members of the Texas Registration Class seek all relief available under that subchapter. Tex. Bus. & Com. Code § 302.303.

**13. Count Four: Violation of Texas Business & Commerce Code § 305.053 (Individually and on Behalf of the Texas Prerecorded Voice Subclass)**

13.1. Plaintiff incorporates by reference all of the above paragraphs as though fully stated here.

13.2. Plaintiff and the members of the Texas Prerecorded Voice Subclass are "persons" as defined by Texas Business & Commerce Code § 1.201(b)(27).

13.3. Defendant is a "person" as defined by Texas Business & Commerce Code § 1.201(b)(27).

13.4. Under Section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted

under that provision, may sue the person who originates the communication for an injunction, damages, or both.

13.5. As set forth above, each of the calls to Plaintiff and to the members of the Texas Prerecorded Voice Subclass violated 47 U.S.C. § 227(b) and the regulations adopted under it, and Defendant originated each call directly or through its agents.

13.6. Plaintiff and the members of the Texas Prerecorded Voice Subclass are entitled to a permanent injunction to prevent further violations of Texas Business & Commerce Code Chapter 305.

13.7. Under Section 305.053(b), Plaintiff and each member of the Texas Prerecorded Voice Subclass are entitled to the greater of $500 or actual damages for each violation.

13.8. Under Section 305.053(c), Plaintiff and each member of the Texas Prerecorded Voice Subclass are entitled to not more than the greater of $1,500 or three times actual damages for each violation the Court finds Defendant committed knowingly or intentionally.

13.9. Relief Sought: Plaintiff, individually and on behalf of the Texas Prerecorded Voice Subclass, requests the following relief:

13.9.1. That Defendant be enjoined from engaging in future telemarketing in violation of Chapter 305;

13.9.2. That Defendant, its agents, and anyone acting on its behalf be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members; and

13.9.3. That Plaintiff and each member of the Texas Prerecorded Voice Subclass be awarded statutory damages of $500 for each violation, increased to $1,500 for each knowing or intentional violation.

## 14. Jury Demand

14.1. Plaintiff, individually and on behalf of the Classes, requests a jury trial on all claims so triable.

## 15. Prayer for Relief

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for the following relief against Defendant Zip Capital Group, LLC:

15.1. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing his counsel as Class Counsel;

15.2. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

15.3. Statutory damages under 47 U.S.C. § 227(b)(3) of $500 per violation, trebled to $1,500 per willful or knowing violation, on an individual and class basis;

15.4. Statutory damages under Tex. Bus. & Com. Code § 305.053 of $500 per violation, increased to $1,500 per knowing or intentional violation, on an individual and class basis;

15.5. Up to $5,000 per violation of Tex. Bus. & Com. Code § 302.101 under § 302.302(a), or in the alternative all relief available under Tex. Bus. & Com. Code § 302.303 and Subchapter E, Chapter 17, on an individual and class basis;

15.6. Statutory damages for Defendant's violations of 47 C.F.R. § 64.1200(b) on an individual basis;

15.7. A permanent injunction barring Defendant, its agents, and anyone acting on its behalf from making artificial or prerecorded voice calls without prior express written consent and from making telephone solicitations into Texas without registration;

15.8. An order requiring Defendant and its agents to preserve all records that could be used to identify class members;

15.9. All reasonable costs of prosecuting this action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees, under Tex. Bus. & Com. Code § 302.302(d) and as otherwise allowed by law;

15.10. Pre-judgment and post-judgment interest as allowed by law; and

15.11. All other relief to which Plaintiff and the Classes are justly entitled.

Respectfully submitted:

By: /s/ Chris R. Miltenberger

Chris R. Miltenberger
Texas State Bar Number 14171200
Designated as Lead Attorney

The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorney for Plaintiff

**Exhibit A**

Prerecorded Calls to 469-XXX-4736

Times are Central Time.

| No. | Date | Time (CT) | Caller ID | Opening of prerecorded message |
|---|---|---|---|---|
| 1 | 2025-10-01 | 10:18:12 | 469-351-8617 | Hi, this is Christina with Capital Group. |
| 2 | 2025-10-02 | 13:00:55 | 254-246-4734 | Hi, this is Christina with Capital Group. |
| 3 | 2025-10-03 | 10:16:50 | 254-271-5722 | Hi, this is Christina with Capital Group. |
| 4 | 2025-10-09 | 12:51:27 | 430-703-5574 | Hi, this is Antoinette with Capital Group. |
| 5 | 2025-10-09 | 13:26:09 | 469-270-6856 | Hi, this is Antoinette with Capital Group. |
| 6 | 2025-10-17 | 10:20:49 | 430-255-3261 | Hi, this is Antoinette with Capital Group. |
| 7 | 2025-10-17 | 12:48:02 | 361-260-6432 | Hi, this is Anthonette with Capital Group. |
| 8 | 2025-10-17 | 16:56:47 | 430-703-5748 | Hi, this is Antoinette with Capital Group. |
| 9 | 2025-10-17 | 17:20:38 | 430-703-5702 | Hi, this is Antoinette with Capital Group. |
| 10 | 2025-10-20 | 10:01:39 | 361-260-6340 | Hi, this is Antoinette with Capital Group. |
| 11 | 2025-10-20 | 16:18:16 | 430-703-5761 | Hi, this is Anson out with Capital Group. |
| 12 | 2025-10-20 | 17:25:21 | 361-910-8563 | Hi, this is Antoinette with Capital Group. |
| 13 | 2025-10-21 | 09:51:55 | 830-239-8258 | Hi, this is Antoinette with Capital Group. |
| 14 | 2025-10-21 | 10:47:57 | 817-406-0844 | Hi, this is Antoinette with Capital Group. |
| 15 | 2025-10-22 | 09:29:03 | 830-254-9336 | Hi, this is Antoinette with Capital Group. |
| 16 | 2025-10-22 | 10:13:41 | 903-304-0902 | Hi, this is Antoinette with Capital Group. |
| 17 | 2025-10-22 | 17:19:07 | 945-600-7532 | Hi, this is Antoinette with Capital Group. |
| 18 | 2025-10-23 | 15:03:34 | 915-358-0879 | Hi, this is Antoinette with Capital Group. |
| 19 | 2025-11-11 | 16:02:51 | 430-255-9359 | Hi, this is Antoinette with Capital Group. |
| 20 | 2025-11-11 | 17:10:51 | 254-720-1014 | Hi this is Antoinette with Capital Group, |
| 21 | 2025-11-12 | 09:18:31 | 254-271-5535 | Hi, this is Antoinette with Capital Group. |
| 22 | 2025-11-12 | 10:48:02 | 254-271-5919 | Hi, this is Antoinette with Capital Group. |
| 23 | 2025-11-12 | 10:51:36 | 254-267-5659 | Hi, this is Antoinette with Capital Group. |
| 24 | 2025-11-12 | 12:00:53 | 430-255-3519 | Hi this is Antoinette with Capital Group. |
| 25 | 2025-11-12 | 15:24:10 | 254-261-9732 | Hi this is Antoinette with Capital Group. |
| 26 | 2025-11-13 | 09:34:09 | 254-261-9203 | Hi, this is Antoinette with Capital Group. |
| 27 | 2025-11-13 | 12:32:42 | 430-255-3136 | Hi, this is Antoinette with Capital Group. |
| 28 | 2025-11-14 | 09:12:56 | 409-800-0411 | Hi, this is Antoinette with Capital Group. |
| 29 | 2025-11-14 | 10:42:10 | 361-260-6880 | Hi, this is Antoinette with Capital Group. |
| 30 | 2025-11-14 | 13:22:52 | 361-260-6955 | Hi, Antoinette with Capital Group. |
| 31 | 2025-11-17 | 10:22:15 | 469-568-1432 | Hi this is Barbara with Capital Groups, |
| 32 | 2025-11-17 | 10:33:18 | 830-239-8109 | Hi this is Antoinette with Capital Group. |
| 33 | 2025-11-17 | 10:58:41 | 469-246-4306 | Hi, this is Barbara with Capital Group. |
| 34 | 2025-11-17 | 11:58:03 | 469-246-4297 | Hi, this is Barbara with Capital Group. |
| 35 | 2025-11-18 | 10:14:55 | 989-660-6624 | Hi, this is Antoinette with Capital Group. |
| 36 | 2025-11-18 | 12:32:35 | 469-568-1445 | Hi, this is Barbara with Capital Groups. |
| 37 | 2025-11-18 | 13:10:36 | 530-451-5546 | Hi, this is Antoinette with Capital Group. |
| 38 | 2025-11-19 | 12:58:37 | 380-600-7807 | Hi this is Antoinette with Capital Group. |
| 39 | 2025-11-20 | 11:00:42 | 425-777-7604 | Hi, this is Antoinette with Capital Group. |
| 40 | 2025-11-20 | 13:31:30 | 469-246-4298 | Hi, this is Barbara with Capital Group. |
| 41 | 2025-11-21 | 10:38:03 | 813-790-0616 | Hi, this is Antoinette with Capital Group. |
| 42 | 2025-11-21 | 17:23:16 | 469-246-4281 | Hi this is Barbara with Capital Group. |
| 43 | 2025-11-24 | 09:52:02 | 469-246-4277 | Hi, this is Barbara with Capital Group. |
| 44 | 2025-11-24 | 09:58:39 | 469-568-1431 | Hi this is Barbara with Capital Group. |
| 45 | 2025-11-24 | 09:59:13 | 252-275-0280 | Hi this is Anthony with Capital Group. |

| No. | Date | Time (CT) | Caller ID | Opening of prerecorded message |
|---|---|---|---|---|
| 46 | 2025-11-24 | 10:52:11 | 469-246-4274 | Hi, this is Barbara with Capital Group. |
| 47 | 2025-11-24 | 11:51:47 | 469-246-4281 | Hi, this is Barbara with Capital Group. |
| 48 | 2025-11-24 | 12:20:34 | 940-229-5387 | Hi, this is Antoinette with Capital Group. |
| 49 | 2025-11-24 | 15:21:06 | 650-412-8832 | Hi this is Anthony with Capital Group. |
| 50 | 2025-11-24 | 16:31:43 | 716-272-9783 | Hi this is Antoinette with Capital Group. |
| 51 | 2025-11-25 | 10:56:40 | 607-219-8765 | Hi this is Antoinette with Capital Group. |
| 52 | 2025-11-25 | 12:40:26 | 469-368-9859 | Hi this is Antoinette with Capital Group. |
| 53 | 2025-12-01 | 09:10:25 | 469-368-9825 | Hi, this is Antoinette with Capital Group. |
| 54 | 2025-12-03 | 16:36:39 | 469-368-9798 | Hi, this is Antoinette with Capital Group. |
| 55 | 2025-12-04 | 09:07:05 | 469-246-4294 | Hi, this is Barbara with Capital Group. |
| 56 | 2025-12-04 | 10:09:55 | 469-368-9830 | Hi, this is Anthony with Capital Group. |
| 57 | 2025-12-04 | 10:32:35 | 469-368-9535 | Hi, this is Antoinette with Capital Group. |
| 58 | 2025-12-04 | 10:51:21 | 469-368-9825 | Hi, this is Antoinette with Capital Group. |
| 59 | 2025-12-04 | 10:53:09 | 469-368-9859 | Hi, this is Antoinette with Capital Group. |
| 60 | 2025-12-04 | 13:43:19 | 469-368-9537 | Hi, this is Antoinette with Capital Group. |
| 61 | 2025-12-10 | 12:29:48 | 469-368-9749 | Hi, this is Antoinette with Capital Group. |
| 62 | 2025-12-10 | 13:26:15 | 469-368-9809 | Hi, this is Antoinette with Capital Group. |
| 63 | 2025-12-11 | 17:52:35 | 469-368-9893 | Hi, this is Antoinette with Capital Group. |
| 64 | 2025-12-12 | 15:43:05 | 469-368-9861 | Hi, this is Antoinette with Capital Group. |
| 65 | 2025-12-12 | 17:47:04 | 469-368-9749 | Hi, this is Antoinette with Capital Group. |
| 66 | 2025-12-15 | 12:27:17 | 469-368-9866 | Hi, this is Antoinette with Capital Group. |
| 67 | 2025-12-15 | 16:13:03 | 469-368-9535 | Hi, this is Anthony with Capital Group. |
| 68 | 2025-12-16 | 10:27:55 | 469-368-9819 | Hi, this is Antoinette with Capital Group. |
| 69 | 2025-12-16 | 15:52:10 | 469-368-9825 | Hi, this is Antoinette with Capital Group. |
| 70 | 2025-12-17 | 13:52:13 | 469-368-9892 | Hi, this is Antoinette with Capital Group. |
| 71 | 2025-12-17 | 17:07:20 | 469-368-9875 | Hi, this is Antoinette with Capital Group. |
| 72 | 2025-12-17 | 17:45:23 | 469-368-9749 | Hi this is Antoinette with Capital Group. |
| 73 | 2025-12-17 | 17:56:48 | 469-368-9892 | Hi, this is Antoinette with Capital Group. |
| 74 | 2025-12-18 | 10:39:32 | 469-368-9848 | Hi, this is Antoinette with Capital Group. |
| 75 | 2025-12-18 | 17:51:25 | 469-368-9535 | Hi, this is Antoinette with Capital Group. |
| 76 | 2025-12-22 | 10:35:06 | 469-368-9881 | Hi, this is Antoinette with Capital Group. |
| 77 | 2025-12-22 | 11:24:32 | 469-368-9793 | Hi, this is Antoinette with Capital Group. |
| 78 | 2025-12-22 | 12:14:20 | 469-368-9861 | Hi this is Anthony with Capital Group. |
| 79 | 2025-12-22 | 13:46:40 | 469-368-9849 | Hi, this is Antoinette with Capital Group. |
| 80 | 2025-12-22 | 17:44:13 | 469-368-9875 | Hi, this is Anthony with Capital Group. |
| 81 | 2025-12-29 | 10:42:09 | 469-368-9809 | Hi, this is Antoinette with Capital Group. |
| 82 | 2025-12-29 | 12:53:38 | 469-368-9822 | Hi, this is Anthony with Capital Group. |
| 83 | 2025-12-29 | 17:11:32 | 469-368-9793 | Hi, this is Antoinette with Capital Group. |
| 84 | 2025-12-30 | 13:34:24 | 469-368-9849 | Hi, this is Antoinette with Capital Group. |
| 85 | 2025-12-30 | 16:42:48 | 469-368-9536 | Hi, this is Antoinette with Capital Group. |
| 86 | 2025-12-30 | 17:42:18 | 469-368-9536 | Hi, this is Anthony with Capital Group. |
| 87 | 2026-01-02 | 10:46:12 | 469-368-9859 | Hi, this is Anthony with Capital Group. |
| 88 | 2026-01-02 | 17:37:27 | 469-368-9866 | Hi, this is Antoinette with Capital Group. |
| 89 | 2026-01-05 | 12:00:39 | 680-206-9567 | Hi, this is Antoinette with Capital Group. |
| 90 | 2026-01-05 | 12:59:37 | 680-206-9567 | Hi, this is Antoinette with Capital Group. |
| 91 | 2026-01-05 | 16:13:21 | 680-206-9567 | Hi, this is Antoinette with Capital Group. |
| 92 | 2026-01-05 | 16:29:58 | 680-206-9567 | Hi, this is Antoinette with Capital Group. |
| 93 | 2026-01-06 | 09:06:21 | 680-206-9567 | Hi, this is Antoinette with Capital Group. |
| 94 | 2026-01-06 | 09:19:25 | 680-206-9567 | Hi, this is Anthony with Capital Group. |

| No. | Date | Time (CT) | Caller ID | Opening of prerecorded message |
|---|---|---|---|---|
| 95 | 2026-01-06 | 17:52:13 | 972-573-1565 | Hi, this is Christina with Capital Group. |
| 96 | 2026-01-07 | 10:32:16 | 726-238-9270 | Hi, this is Antoinette with Capital Group. |
| 97 | 2026-01-07 | 12:06:51 | 254-249-9413 | Hi, this is Antoinette with Capital Group. |
| 98 | 2026-01-07 | 16:19:29 | 806-209-5772 | Hi, this is Ansonette with Capital Group. |
| 99 | 2026-01-08 | 10:09:21 | 945-212-6379 | Hi, this is Danzo Nett with Capital Group. |
| 100 | 2026-01-08 | 11:16:00 | 409-207-7188 | Hi, this is Antoinette with Capital Group. |
| 101 | 2026-01-08 | 13:17:17 | 956-253-5051 | Hi, this is Antoinette with Capital Group. |
| 102 | 2026-01-08 | 16:20:44 | 945-212-6094 | Hi, this is Antoinette with Capital Group. |
| 103 | 2026-01-09 | 12:17:03 | 945-212-5968 | Hi, this is Anthony with Capital Group. |
| 104 | 2026-01-09 | 12:26:17 | 830-208-6531 | Hi, this is Antoinette with Capital Group. |
| 105 | 2026-01-09 | 13:28:13 | 281-417-1666 | Hi, this is Antoinette with Capital Group. |
| 106 | 2026-01-09 | 15:26:15 | 469-246-4297 | Hi, this is Barbara with Capital Group. |
| 107 | 2026-01-09 | 15:26:16 | 469-246-4280 | Hi, this is Barbara with Capital Group. |
| 108 | 2026-01-09 | 15:47:54 | 972-573-1565 | Hi, this is Antoinette with Capital Group. |
| 109 | 2026-01-09 | 16:16:31 | 346-230-3976 | Hi, this is Antoinette with Capital Group. |
| 110 | 2026-01-09 | 18:08:00 | 346-230-3976 | Hi, this is Briana with Capital Group. |
| 111 | 2026-01-12 | 09:17:41 | 469-246-4288 | Hi, this is Briana with Capital Group. |
| 112 | 2026-01-12 | 09:17:41 | 469-246-4308 | Hi, this is Briana with Capital Group. |
| 113 | 2026-01-12 | 09:17:42 | 469-246-4291 | Hi, this is Briana with Capital Group. |
| 114 | 2026-01-12 | 09:17:47 | 469-246-4309 | Hi, this is Briana with Capital Group. |
| 115 | 2026-01-12 | 10:19:33 | 945-212-6102 | Hi, this is Ann Swenett with Capital Group. |
| 116 | 2026-01-12 | 11:01:14 | 281-417-1670 | Hi, this is Lara with Capital Group |
| 117 | 2026-01-12 | 11:01:15 | 254-249-2747 | Hi, this is Lara with Capital Group. |
| 118 | 2026-01-12 | 11:01:16 | 936-241-1613 | Hi, this is Lara with Capital Group. |
| 119 | 2026-01-12 | 12:50:52 | 713-424-3301 | Hi, this is Dan Fonet with Capital Group. |
| 120 | 2026-01-12 | 13:33:39 | 432-204-2888 | Hi, this is Antoinette with Capital Group. |
| 121 | 2026-01-21 | 09:05:00 | 938-223-8795 | Hi, this is Antoinette with Capital Group. |
| 122 | 2026-01-21 | 09:27:33 | 740-241-5652 | Hi, this is Antoinette with Capital Group. |